from Mr. Srinivasan. Good morning, and may it please the Court. Rajesh Srinivasan for the United States. I plan to reserve two minutes for rebuttal, and I will watch my clock. Whether defendants can waive the protections of Rule 410 in a plea agreement? Defendants' knowing and voluntary waivers of Rule 410 are enforceable, including when they appear in proper agreements made during the course of plea negotiations. As seven other circuits have recognized, these waivers are equally enforceable when they appear in plea agreements. This Court should join those circuits and reverse the District Court's contrary ruling. Mezzanotto's reasoning and holding control the result here. Well, I mean, certainly Mezzanotto controls the issue whether you can voluntarily waive. But here, this isn't some sort of freestanding separate agreement. It's embedded in a plea agreement and tied to the obligation to plead guilty. That's the alleged breach here. So why doesn't our case law that says that plea agreements are not valid and enforceable until they're approved by the Court control this case? Two responses, Your Honor. First, the Court's prior decisions on unrelated issues do not control the result here. This Court has recognized that when an issue is not squarely presented before it and relevant case law is not cited, that those decisions will not control results in different cases. And none of the cases cited by the defendant is a discussion of Mezzanotto present or Puckett or Rebbi, the three main cases that the government relies on. Second, even though plea agreements obligate the defendant to plead guilty, they're not tied to the taking of the guilty plea. They are private agreements between a defendant and the government. One of the duties of those agreements is to plead guilty. Are you aware that there's a substantial number of cases in which the government has successfully persuaded courts of appeals that the government isn't bound by plea agreements and can change its mind and walk away? So is it your position that we should reject those cases as wrongly decided? Yes. Those cases, to the extent that those decisions are precedent of this Court, we believe that Mezzanotto and Puckett make clear that plea agreements should be treated like any other contracts and the government should also be held to those plea agreements before the acceptance of a guilty plea. So it sounds then like we're going to create a circuit split, whichever way we go, because there are several cases in other circuits that have allowed the government to back out of plea agreements before court approval on precisely the ground that they're not enforceable until they're accepted. But now you're telling us it's going to be the same for both sides. That's the position you're advocating in this circuit? That is our position, and it would at least not create a circuit split with the decisions that were discussed in the parties' brief. At least three of those decisions, and arguably four, involved plea agreements that were enforced before the taking of any guilty plea. In those decisions, either the defendant's factual basis or statements made in the course of plea negotiations were accepted as evidence at trial. Mr. Srinivasan, isn't the converse also true with respect to the 410 issue? So in the cases involving the enforcement of the 410 issue, even though the procedural posture might have been within the context of a plea agreement, the court never discussed authority with respect to the enforceability of a plea agreement before the plea's been accepted. Those cases that seem to be in tension on the 410 issue don't really address in any detail the question we're addressing. At least Washburn from the 8th Circuit addresses precisely this issue. In that case, the defendant made the same argument that the defendant is making here, that before a court accepts a guilty plea, there is no binding plea agreement, and it's not enforceable. The 8th Circuit correctly rejected that argument and said that a plea agreement is binding upon the signature of the parties. And that is true in this case as well. So my issue with the citations to the cases from other circuits is that I don't see those other circuits as having anything similar to our Kuczynski line of cases. I mean, do they? I'm not familiar with those circuits having precedent similar to Kuczynski, but to the extent that Kuczynski, this court feels like Kuczynski is in tension with Mezzanotto or with Puckett, this court has recognized that when a Supreme Court decision's holding or reasoning undermine this court's precedent, that it is bound by the Supreme Court's. I think it's that it needs to be clearly irreconcilable with our precedent. So why don't you tell me why Kuczynski is irreconcilable with Mezzanotto? Because I don't read it that way, but why don't you tell me why you see it that way? It's irreconcilable with Mezzanotto and Puckett together. Puckett recognizes that plea agreements are contracts, and the breach of a plea agreement entitles a party to a remedy. So that decision teaches us that plea agreements should be treated just like proper agreements, like any other contract. Mezzanotto recognizes that defendants can voluntarily waive their Rule 410 rights in private contracts. So if a plea agreement is a private contract, which this court has recognized and the Supreme Court has recognized, then it should be treated the same as a proper agreement. A conditioned precedent to the enforcement of the plea agreement was not the taking of a guilty plea. The plea agreements explicitly told the defendant that it would be effective upon his signature, his attorney's signature, and the signature of an assistant United States attorney. What happens if the court rejects the plea? If the court rejects the plea, this particular provision waiving Rule 410 would not be triggered because the defendant will not have breached the plea agreement in that case. The defendant would have gone through with their obligation to attempt to plead guilty, and only because of legal impossibility will they have not been able to. And basic contract law recognizes that when a duty is legally impossible, that duty is discharged and the party does not have to follow through with it. In addition to the... Doesn't Rule 11 give a defendant an absolute unconditional right to decline to plead guilty in advance of actually pleading guilty? That's correct, Judge Collins, but there's a difference between a plea agreement and a plea. A defendant can agree to plead guilty and then exercise their constitutional right not to plead guilty, just as any party to a contract can decide to breach their obligations in that contract. But just like any other party, when a defendant breaches their obligation to plead guilty, it triggers breach consequences, and this agreement laid out those consequences. But doesn't that suggest... Rule 11 essentially says that it's unenforceable to have an obligation to plead guilty in advance of the court accepting it? That's not how I read Rule 11. Rule 11 says that a defendant can choose not to plead guilty before a plea is taken, but it doesn't say anything about limiting a defendant's ability to negotiate for benefits with the government by entering into a private agreement. In fact, Rule 11 compels different treatment of pleas on the one hand and plea agreements on the other by addressing them in separate subsections. So the conflation of pleas and plea agreements that the defendant is proposing is incorrect under Rule 11. Is it the policy of the U.S. Attorney's Office to insert this language in every plea agreement in the office? Typically, this language is in at least our office's plea agreements, and if I'm correct, it is in other offices' plea agreements as well, both within the circuit and outside of the circuit. That's how we have cases like Washburn where the defendant decided not to plead guilty and their factual basis was still admissible at trial. Are you familiar with the Norris case, the Ambank-Norris decision in the Eighth Circuit or the First Circuit's decision in Vizcarando-Casanova? I'm not familiar with that case. And those are some of the cases that I was referencing where the government in other circuits has been able to renege on plea agreements that were not accepted on exactly the rationale we're hearing from the other side today, which is why I raise this concern. Are we going to create a circuit split whichever way we go in this case? To the extent that those decisions say that the government is not bound by plea agreements, we would disagree with those cases, and that's important because defendants should be able to depend on the government's promises and the change of a U.S. attorney or the change of an AUSA on the case should not dictate whether a plea agreement they have signed is enforced. We've taken you over your time, or chewed up most of your time. I'll give you two minutes in rebuttal. Thank you, Your Honor. Thank you. We'll hear now from Mr. Averitt. Long A, Your Honor. Averitt? Averitt. Yes. Yes. Thank you. Thank you. Elliot Averitt for Defendant Appealee, Yasiel Puig. Your Honors, for decades, this court has held that a plea agreement that has not yet been entered and accepted in the district court does not bind the government or the defendant. Because Mr. Puig's Rule 410 waiver was part of his plea agreement that had not been entered or accepted by the district court, it was not enforceable. Even if it was possible to contract around that rule, here the district court found that Mr. Puig's Rule 410 waiver never unambiguously stated that it was enforceable prior to entry and acceptance of the plea, and that is yet another independent reason why this court should affirm. But the plea agreement says right on its face that it's effective upon the last of the signatures specified. Your Honor, it does say that, but if you take a close look at the language at ER 32, I think really what the plea says, or the agreement says, is it's effective when signed. And I don't think that really differentiates it from any other agreement that we kind of sign throughout our day-to-day life. We go through our lives, we sign agreements. But, you know, by contrast, I would point the court to the decisions in circuits that have enforced these agreements. In the 8th Circuit and the 11th Circuit, particularly in the El-Bablaoui and Washburn cases, the language of the waivers there, and I'm happy to quote it for the court at length, but it's at 780 in Washburn and 935 in El-Bablaoui, was much, much more explicit than what we have in this plea agreement. It was very clear about the fact that the Rule 410 waiver was enforceable, notwithstanding the fact that the plea had not been entered or accepted. I wanted to address Mr. Srivastava's point about the pocket decision, because I think this court has a really clear rule. Judge Thomas was mentioning it. Miller v. Gami, I think, doesn't allow for what the government is asking the court to do here. The only case they have that is even arguably intervening authority is Puckett, because it's the only case cited in their brief that postdates Kuczynski in 2006. Hyde, this court specifically said, and Alvarez-Tautemez, that Hyde does not overrule this line of cases. Mazzanato's decided, I think, in 1995, so it is by definition not intervening authority. And in Puckett, Justice Scalia specifically stated that while there is a general rule that we treat plea agreements as analogous to contracts, that is an analogy. And Justice Scalia even said that analogy may not hold in all respects. I think that's especially applicable here, because we're talking about an agreement that is not just a bilateral agreement. It's a charge bargaining agreement. The district court can reject it for a number of reasons. Failure to go through the colloquy under 11B. It can be rejected under, I think, 11C. And so it's not just a bilateral agreement between two parties. It's something that is contingent upon acceptance and approval by the district court, which never occurred. What do you make of the, if we take the contract framing, the impossibility defense? I mean, what's the best contract frame for a district court's refusal to accept a plea in this instance? I'm not sure what the exact contractual analogy would be, but I do want to point... I don't think realistically that what the government is suggesting here is possible. And I would really encourage the court to look at exactly what happened below, S.E.R. 4 through 8, because Mr. Puig's trial counsel came into court and said, Your Honor, I can't go through with the Rule 11 colloquy today. I haven't fully advised my client about all of his possible legal defenses, and the court will not be able to accept the plea. But that's something that hopefully is relatively rare, but that's part of the allocation of risk that the parties took on when they signed the agreement, is it not? I disagree with that, Your Honor, for the simple reason that, again, the agreement itself is contingent upon acceptance by the district court, and this court's line of cases, long line of cases... But you focused us on the text, and if we follow the text, where in the plea agreement does it say that it's contingent on acceptance by the district court? It doesn't say that explicitly, but what we don't have is a clear statement. And I think at a minimum, given the background rule of the Fagan, Savage, and Kuczynski line of cases, that there has to at least be a clear statement that those cases don't apply, because just like if you're talking about, for example, the covenant of good faith and fair dealing that's implied in every contract, right? This is a background principle against which the parties are bargaining. And absent some clear statement, I don't think that it falls out of the agreement. And again, I would point to the decisions, Elbow Lawley, Washburn decisions from circuits that do enforce these agreements, which, again, we disagree with those decisions, and we think that, as Your Honor pointed out, they don't really address the key question here in any depth. But to the extent that these agreements are enforceable, we think there has to be, in light of this court's case law, a clear statement that the agreement is enforceable prior to entry and acceptance. And those circuits recognized waivers that were much, much more explicit than what we have. So your view, it would be consistent with Rule 11 if the U.S. Attorney's Office decided to contract around that? If it were an express term, there'd be no conflict with the rule? We actually don't agree with that, Your Honor. And I wanted to mention, and I think Judge Collins had asked about Rule 11, because in Floyd, at 1F3rd 870, the Floyd case that's cited in our brief, this court recognized that the Fagan-Savage-Kuczynski rule is actually derived from the plain text of Rule 11. And I know that the government would like to draw a distinction there, but it specifically stated, the court stated in Floyd, that Rule 11 requires a district judge in open court to determine that the agreement is voluntary and not the result of threats or promises apart from the plea agreement. Without such a hearing, Floyd was deprived of the safeguards. Rule 11 was enacted to impose. So this court has already read Rule 11 in the way that we're arguing in our brief, and we don't think Rule 11 allows the parties to contract around like this. But we also think that as an alternative grounds for affirmance, this court could look at what the First Circuit did in Newbert and say, you know, regardless of whether, and I hear Judge Collins' concern about, you know, maybe a circuit split everywhere you go, I think one way out of that is to look at what the First Circuit did in Newbert and say, whether or not these waivers are enforceable generally, in this specific case, there had to be a clear statement that the waiver was enforceable prior to entry and acceptance in light of this court's past case law at a minimum. It's awfully clear when you say that the contract is effective upon these set of signatures, and it very clearly says what the defendant's obligations are, and the first one is to actually enter a plea of guilty, and then it has here are the remedies for breach. You put those three pieces together, and it seems very clear. Why is it like Newbert? I think it's like Newbert because of the background principle. And Newbert, the plea agreement in Newbert did say that the defendant was obligated to plead guilty. Now it's a little bit different because he withdrew for a fair and just reason. But I think the difference is, and you don't see this in the other circuit cases that either party cites, is that this court does have this background rule. So again, that's not our primary argument. We think that this is a really easy case to resolve just based on Fagan, Savage, and Kuczynski because what the government's essentially asking you to do here is for some reason carve these Rule 410 waivers out of the plea agreement and treat them differently from the way that this court has treated these agreements as a whole. And Judge Collins, with respect to your point about the government relying on this rule many times, they got out of these agreements in Savage and Kuczynski based on these rules, and most recently in the District of Idaho, the Welch case that's cited in our brief, the government actually relied on the Kuczynski rule to get out of a plea agreement that it didn't like anymore. And so again, we think this is something that cuts both ways, and it's the most straightforward way to resolve this case. Howard, looking at Kuczynski, I've picked up some confusion in the use of whether the court is accepting the plea or the plea agreement. I'm not sure whether that matters too much, but of course Hyde is clear that there's a separation. Rule 11 appears clear that there's a separation between the plea, a term of the plea agreement, and the court's acceptance of the plea agreement, which may not be accepted until later. Does it matter whether we're discussing in this case the court's acceptance or non-acceptance of a plea or a plea agreement? I don't think it matters, Your Honor. I mean, I think there is a policy that Rule 11 reflects, and the text of Rule 11 reflects it, and it's what this court was recognizing in Floyd. And the policy is that the district court should be determining on the record, in open court, that the plea agreement is actually knowing, intelligently, and voluntarily entered. And with respect to what Judge Collins asked about other U.S. attorneys' offices, I know there are districts where the U.S. attorneys actually bring a pen to the plea hearing and sign the plea agreement in front of the court. I don't think that's what happens in the Central District of California, but there are districts where these waivers aren't enforced like this. With respect to the distinction between Rule 11 pleas and plea agreements, I think what Rule 11 reflects is a policy, right? And the specific facts of this case, in terms of Mr. Puig's not being able to consult with counsel in person, not speaking English as a first language, really limited education, those – I'm sorry, I'm over time. We think that that's all the more reason to require an on-the-record Rule 11 colloquy before holding that the agreement is enforceable. Unless the court has further questions. Thank you, Your Honors. All right, we'll hear from Rupanul now. Thank you, Your Honor. The defendant's argument rests on a false premise, that if he had tried to plead guilty and the court had rejected his guilty plea or he had later withdrawn his guilty plea, that the same Rule 410 waiver would have been triggered. That is not clear. Newbert is not inconsistent with the government's argument, because there the First Circuit recognized that when the defendant doesn't breach and the 410 waiver is based on a breach, the Rule 410 waiver is not triggered. So, to hear, if the defendant had not breached the agreement, either by pleading guilt – trying to plead guilty and not having his plea accepted or successfully withdrawing the plea for a fair and just reason, then we wouldn't be here today. Second, the agreement unambiguously states, as you pointed out, that the signature is what makes the agreement effective, not the acceptance of the agreement by the court. That's on ER 32, and the court can look at that language, and I think it's exactly as clear as the language in the decisions that the defendants tried to distinguish. Finally, the one way that the Puckett analogy definitely holds, regardless of what other distinctions are there, is that a breach of a plea agreement triggers a remedy, and that's what we have here. The plea agreement was breached by the defendant, and the government was entitled to the remedy stated in the plea agreement. And Hyde also recognizes this. Hyde says that a condition subsequent of rejection of the plea agreement might terminate the plea agreement. That can only be true if the plea agreement is a contract before it's accepted or rejected by the court. Finally, to the extent that defendants want to negotiate around Rule 410, they can try to do so. The defendant didn't do so here. Instead, he agreed to not follow the background principle that plea agreements must be accepted before effective, and instead agreed that it would be effective upon signing. Unless the court has further questions, we ask that the court reverse. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: COLLINS, THOMAS, JOHNSTONE